IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEBRA SHIELDS,

    Plaintiff,

v.                                                          Case No. 6:15-CV-1021-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.


**MEMORANDUM AND ORDER**

Plaintiff Debra Shields seeks review of a final decision by defendant, the Commissioner of Social Security, denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Upon review, the court finds that the Commissioner's decision is supported by substantial evidence contained in the record and is therefore affirmed.

### I.    Factual and Procedural Background

Plaintiff filed for DIB on October 14, 2011, alleging disability beginning August 10, 2011. Her claim was denied initially on March 1, 2012, and upon reconsideration on September 6, 2012. Plaintiff timely filed a request for an administrative hearing, which took place on July 15, 2013, before Administrative Law Judge ("ALJ") Susan Conyers. Plaintiff, represented by counsel, appeared and testified. Also testifying was Vocational Expert ("VE") Alissa Smith.

The ALJ issued her decision on September 18, 2013, finding that plaintiff suffered from a variety of severe impairments, including degenerative cervical joint disease status/post cervical spine fusion surgery, mild left shoulder degenerative joint disease, rheumatoid arthritis, chronic

obstructive pulmonary disease ("COPD"), obesity, fibromyalgia, reactive depression (grief), and anxiety.  Despite these findings, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  She concluded that plaintiff retained the residual functional capacity to perform light work with the following additional restrictions and/or limitations: (1) occasionally climb ramps and stairs, but no climbing of ladders, ropes, or scaffolds; (2) occasionally stoop, kneel, crouch, and crawl; (3) no reaching overhead with the bilateral upper extremities; (4) avoid concentrated exposure to temperature extremes, vibration, humidity, fumes, odors, gases, and poor ventilation; (5) frequently use the right and left hand for fine and gross manipulation; (6) perform simple and intermediate tasks involving no interaction with the general public and no more than occasional interaction with coworkers and supervisors; and (7) a sit/stand option that allows her to change positions every 30 to 60 minutes.

The ALJ therefore concluded that plaintiff was not under a disability during the relevant time period.  This decision became the final decision of the Commissioner on November 19, 2014, after the Appeals Council denied review.  On January 19, 2015, plaintiff filed a Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration and an award of attorney's fees.  Given plaintiff's exhaustion of all administrative remedies, her claim is now ripe for review before this court.

## II.   Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must

therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

In her brief, plaintiff alleges that the ALJ failed to: (1) take into account and specifically discuss in her written narrative a Work Activities Questionnaire completed by plaintiff's former employer, and (2) perform an appropriate credibility analysis.

### III.     Analysis

**A.     Work Activities Questionnaire**

Plaintiff first alleges that the ALJ erred by failing to consider the third-party information and observations offered by plaintiff's former supervisor Megan Hentzen.  At the request of the Social Security Administration, Ms. Hentzen completed a three-page Work Activities Questionnaire detailing plaintiff's performance while working as an evening custodian and food service worker at Labette Community Junior College.  Dkt. 10, at 269-71.  Ms. Hentzen indicated that plaintiff had some difficulty: (1) learning the cash register, (2) learning safety/health guidelines, (3) performing when she was limited to only one break per day, (4) cooperating with coworkers, (5) keeping regular attendance, (6) performing repetitious tasks, (7) understanding and carrying out simple directions in a reasonable amount of time, and (8) staying on task.  Dkt. 10, at 269-71.  Plaintiff reportedly had great difficulty with: (1) accepting instructions (specifically not wanting to wear gloves), and (2) understanding and following safety guidelines.  Dkt. 10, at 269-71.  Ms. Hentzen indicated that plaintiff was terminated due to her inability to perform her job as a result of her physical limitations after surgery.  Dkt. 10, at 271.

The law in the Tenth Circuit is quite clear with regard to "opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors.  The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion."  *Jackson v. Colvin*, 2013 U.S. Dist. LEXIS 172576, at *17 (D. Kan. Dec. 9, 2013) (quoting *Croley v. Colvin*, 2013 U.S. Dist. LEXIS 22052, at *15-16 (D. Kan. Feb. 19, 2013)).

The Commissioner argues that any potential omission does not warrant a remand, however, because the ALJ's decision was only required to reflect that she *considered* all the evidence of record, including the Questionnaire.  In support of her argument, the Commissioner relies on language from *Clifton v. Chater*, which states that "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." 79 F.3d 1007, 1009-10 (10th Cir. Kan. 1996) (internal citations omitted).  Moreover, the Commissioner argues that any oversight on the part of the ALJ is harmless, since the Questionnaire was not a medical opinion and much of the report merely overlapped with plaintiff's own testimony, which the ALJ specifically found to be not credible. Dkt. 14, at 4.  The Commissioner also points out that Ms. Hentzen's report dealt with plaintiff's inability to perform her past employment, something the ALJ acknowledged plaintiff could not do anyway. Dkt. 14, at 4-5.

Here, the ALJ made very clear that that she had considered all of the evidence in reaching her determination.  Dkt. 10, at 17, 21, 22, 27.  The Commissioner concedes, however, that the ALJ did not specifically mention Ms. Hentzen's report, nor did she do a separate analysis thereof. Dkt. 14, at 4.

The Tenth Circuit has recently found that a failure to consider the statements of a third party is harmless error where the same evidence used to discredit plaintiff's statements also discredited the third party's opinions. *See Best-Willie v. Colvin*, 514 Fed. App'x 728, 736 (10th Cir. 2013); *see also Eastman v. Colvin*, 2014 U.S. Dist. LEXIS 165641, at *33 (D. Kan. Nov. 25, 2014) (finding harmless the ALJ's failure to discuss third-party opinion).  In support of her

6

argument, plaintiff alleges that the employer's statements provide some support for the opinions of plaintiff's treating physicians, namely Dr. Hsu, who opined that plaintiff would require one to two breaks per day, and Dr. Tiurchy, who opined that plaintiff did not have the capacity to work full time. Dkt. 11, at 11-12. These limitations, plaintiff argues, are comparable to Ms. Hentzen's observations that plaintiff had some difficulty completing tasks when only allowed one break, and also had great difficulty maintaining acceptable attendance. Dkt. 11, at 11-12.

A review of the ALJ's opinion, however, reveals that the ALJ assigned both Dr. Hsu's opinion and Dr. Tiurchy's opinion no weight. Dkt. 10, at 26. Plaintiff has not alleged that this assignment was in error. The court therefore finds that the ALJ's error in failing to discuss Ms. Hentzen's opinion is harmless. Plaintiff's first assignment of error is denied.

**B.      Credibility**

Plaintiff next argues that the ALJ improperly discounted her credibility. More specifically, plaintiff alleges that the ALJ simply recited the factors required to be taken into consideration when assessing a claimant's credibility, summarized the entire record, and concluded plaintiff was not credible without providing any concrete reasoning. Dkt. 11, at 14.

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective claims of debilitating pain are

credible. SSR 96-7p, 1996 SSR LEXIS 4, at *3 (July 2, 1996). The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any prescribed treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies the evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *12).

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits," (*Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)), an ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The court cannot displace the ALJ's choice between two fairly conflicting views even though the court may have justifiably made a different choice. *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). However, notwithstanding the deference generally given to an ALJ's credibility determination, "findings as to credibility should be closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

At steps one and two, the ALJ determined that plaintiff established pain-producing impairments that could reasonably be expected to cause the alleged symptoms. She then proceeded to step three, weighing plaintiff's subjective complaints of physical limitations against objective medical evidence relating to physical symptoms and ultimately found plaintiff "not entirely credible." Dkt. 10, at 22.

The record reveals that, despite a history of treatment for rheumatoid arthritis (for which plaintiff had been treated since 2008), COPD, back pain, high blood pressure, depression, and anxiety, plaintiff did not actually stop working until *after* her neck injury and subsequent surgery in October 2011.  Dkt. 10, at 269, 271.  However, when plaintiff returned to her surgeon in February 2012, four months after her surgery, treatment notes indicated that plaintiff reported "decreased neck pain" and her "left arm pain [was] doing much better than before surgery." Dkt. 10, at 414.  Plaintiff reported that felt she was improving overall. Dkt. 10, at 414.  In April 2012, plaintiff reported having a 40% improvement since the surgery and that she no longer had any arm pain.  Dkt. 10, at 422.  During an appointment in May 2012, plaintiff had only mild tenderness upon palpation of her joints, and no joint swelling, warmth, or erythema. Dkt. 10, at 433.

In late 2012, plaintiff and her husband drove from their home in Parsons, Kansas, to visit family in Florida. Dkt. 10, at 69.  They remained in Florida for six months. Dkt. 10, at 25, 70. During her stay, plaintiff began treatment with another physician, but did not complain of joint swelling or deformity associated with her rheumatoid arthritis and testing revealed a stable respiratory condition. Dkt. 10, at 25, 512. In March 2013, plaintiff reported that her joint pain

was under control with her current medications. Dkt. 10, at 25, 497. Despite a diagnosis of COPD, plaintiff was still smoking at the time of the administrative hearing in July 2013. Dkt. 10, at 72.

As noted above, credibility findings are the province of the ALJ and will be affirmed if supported by substantial evidence. *Wilson*, 602 F.3d at 1144; *Hackett*, 395 F.3d at 1173. The court finds the ALJ's credibility assessment of plaintiff to be based on substantial evidence. Accordingly, plaintiff's second assignment of error fails and is therefore dismissed.

**IT IS THEREFORE ORDERED** this 28th day of July, 2015, that the decision of the Commissioner is affirmed.

s/J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE